ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| FABIÁN RIVERA MONTALVO<br>RECURRENTE<br><br>V.<br><br>OFICINA DE PROGRAMAS Y SERVICIOS CORRECCIONALES; DEPARTAMENTO DE CORRECCIÓN Y REHABILITACION Y OTROS<br><br>RECURRIDO | KLRA202500223 | Revisión judicial procedente del Departamento de Corrección y Rehabilitación<br><br>Caso Núm. 12-23957<br><br>Sobre:<br>Programa de Pre-Reinserción Comunitaria |

Panel integrado por su presidenta, la Jueza Martínez Cordero, el Juez Cruz Hiraldo y la Juez Lotti Rodríguez. [1]

Lotti Rodriguez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico a 14 de agosto de 2025.

I.

El 7 de abril de 2025 el Sr. Fabian Rivera Montalvo (recurrente), por propio derecho, presentó escrito que intitula *Revisión de Decisión Administrativa en Auxilio de Jurisdicción.* Indicó que, el 21 de julio de 2023, el Comité de Clasificación y Tratamiento (CCT) del Departamento de Corrección y Rehabilitación (DCR) lo refirió al Proyecto de Pre-Reinserción Comunitaria Centro de rehabilitación y Nuevas Oportunidades de Arecibo (CRNO).[2] Así pues, se acordó la evaluación de su caso Núm. 12-23957 para continuidad de su proceso de rehabilitación.

---

[1] Conforme la OATA2025-069 del 7 de mayo de 2025, se asignó a la Juez Glorianne M. Lotti Rodríguez en sustitución del Juez Abelardo Bermúdez Torres.
[2] Anejo I del recurso, pág. 1.

Número Identificador

SEN2025_____

El 7 de junio de 2024 el DCR remitió al señor Rivera Montalvo la evaluación de su caso. La Agencia determinó que el caso sería "Pospuesto" y esbozó las siguientes razones:

> Se refiere para evaluación adicional para cumplir con lo dispuesto en el Plan de Reorganización #2-2011 en sus artículos, 17, 18, y 19 de los derechos de las víctimas de delitos en los procesos relacionados con los Programas de Desvíos y Comunitarios.[3]

Posteriormente, el 18 de noviembre de 2024, notificada el 21 de febrero de 2025, el DCR determinó que el caso es "No Favorable".[4] Explicó que "[e]l MPC deberá someter otro plan de salida tomando en consideración que debe ser fuera de los Municipios de Moca y San Sebastián".[5]

Insatisfecho, el 24 de febrero de 2025, el señor Rivera Montalvo, presentó una *Solicitud de Reconsideración*. Reiteró, entre otros temas que, fue notificado de la determinación del DCR tres (3) meses y (3) tres días después de evaluado su caso para el Programa de Pre-Reinserción a la libre comunidad. Adujo que no estaba de acuerdo con la determinación tomada por la Agencia y sostuvo que esta no se basaba en evidencia sustancial. Alegó que esta incurrió en errores al aplicar e interpretar las leyes y reglamentos pertinentes. El DCR no emitió respuesta, por lo que la *Solicitud de Reconsideración* se considera rechazada de plano.

Aún inconforme, el 7 de abril de 2025,[6] Rivera Montalvo acudió ante nos.[7] Plantea:

---

[3] Anejo II del recurso, pág. 2.
[4] Anejo III del recurso, pág. 3.
[5] *Id.*
[6] El recurso cuenta con el matasellos del Tribunal de Apelaciones con fecha del 11 de abril de 2025. No obstante, conforme a nuestro Reglamento y según resuelto en *Álamo Romero v. Adm. Corrección*, 175 DPR 314, 323 (2009) entendemos que el recurso fue presentado en la fecha de entrega a la institución carcelaria. ("En los casos de revisión judicial de decisiones administrativas de la Administración de Corrección en procedimientos disciplinarios instados por reclusos por derecho propio, se entenderá que el recurso fue presentado en la fecha de entrega a la institución carcelaria. Esta autoridad será responsable, a su vez, de tramitar el envío del recurso al foro correspondiente".)
[7] En cuanto a la *Declaración en Apoyo de Solicitud para Litigar como Indigente (In forma pauperis),* presentada por el señor Rivera Montalvo el 7 de abril de 2025, Ha Lugar.

**Primer error**:
Erró el D.C.R. al determinar que el caso NO ES FAVORABLE ello luego de-el mismo D.C.R. identificar que el caso era favorable y luego de haber estudiado, analizado y determinado que el M.P.C. es un candidato potencial y luego de haber preparado un informe y presentado el mismo ante el C.C.T. de conformidad al apartado IV Letra C inciso Núm. 1 y 2 de la O.A. DCR-2023-03, supra. Lo que catalogamos contraproducente y contrario a derecho.

**Segundo error**:
Err[ó] el D.C.R. en la aplicación e interpretación de las leyes y reglamentos que se les ha encomendado administrar, lesionando así los derechos fundamentales del "Peticionario", al actuar así, arbitraria, caprichosa, irrazonable e ilegalmente, habiendo emitido una determinación final carente de base racional y contrario a derecho.

**Tercer error**:
Err[ó] el D.C.R. al denegar al "Peticionario" participar del proyecto para Pre-Reinserción a la libre comunidad ignorando así que su actuación supone un grave prejuicio para el Sr. Rivera, en tanto interrumpi[ó] el proceso de rehabilitación emprendido por este, proceso que constituye la meta principal del sistema penal según la "Carta Magna". Dicha actuación privó al "Peticionario" (y lo priva) de poder contar con mayores elementos a la hora de ser considerado para una libertad condicional, conforme lo establece la política pública del mismo Departamento.

**Cuarto error**:
Err[ó] el D.C.R. al notificar al "Peticionario" sobre la determinación FINAL en relación al referido al Proyecto para la Pre-Reinserción a la libre comunidad con fecha de 21 de julio de 2023, fuera del término establecido en la L.A.U.G. [sic] y de la Reglamentación vigente, incumpliendo así con las garantías mínimas contenidas en la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico...Ley Núm. 38 de 30 de junio de 2017, según enmendada, 3 L.P.R.A. § 9602.

**Quinto error**:
Err[ó] el D.C.R. al denegar al "Peticionario" poder participar del Proyecto de Pre-Reinserción a la libre comunidad, coartando su interés libertario y coartando la política publica de la Agencia sección 19 del Art. VI de la Constitución del Estado Libre Asociado de Puerto Rico L.P.R.A. Tomo 1, ya que a través de dicho programa viabiliza que el confinado trabaje para el sustento económico de sus familiares o estudios mientras utiliza un brazalete electrónico, el cual es el deseo e interés del Sr. Rivera.

**Sexto error**:
Err[ó] el D.C.R. al incumplir con el mandato de Rehabilitación, al utilizar como único factor -una interpretación errónea del Reglamento Núm. 9603 de 25 de septiembre de 2024 Art. X Letra E núm. IV, ya que

lo que allí se establece es que si el confinado no tiene hogar viable- "No podr[á] disfrutar de pases hasta tanto no provea una residencia alterna".

**Séptimo error**:
Err[ó] el D.C.R. al actuar irrazonable, e ilegal, ya que su determinación final conduce a la comisión de una injusticia, ya que su interpretación produce resultados incompatibles o contrarios al propósito del estatuto interpretado y a su política pública.

**Octavo error**:
Err[ó] el D.C.R. al abusar de su discreción al abstenerse de realizar el correspondiente análi[s]is hermenéutico de forma conclusiva para determinar si el "Peticionario" cualifica conforme a los criterios de elegibilidad contenido en el Apartado IV de la O.A. DCR-2023-03 de 7 de septiembre de 2023.

El DCR presentó un *Escrito en Cumplimiento de Resolución* el 20 de junio de 2025. Allí, este expresa no tener objeción con que se devuelva el caso a la agencia para que reevalué la solicitud de la parte recurrente.

Evaluados los escritos de las partes, procedemos a disponer:

## II.

## A.

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*,[8] dispone el alcance de la revisión judicial de las determinaciones de las agencias. Tanto la referida Ley como la jurisprudencia aplicable establecen que la función revisora de las decisiones administrativas concedida a los tribunales apelativos consiste esencialmente en determinar si la actuación de la agencia fue dictada dentro de las facultades que le fueron conferidas por ley y si la misma es legal y razonable.[9] Al respecto, es norma de derecho claramente establecida que los tribunales apelativos han de conceder gran deferencia y consideraciones a las decisiones de los organismos administrativos en vista de la vasta experiencia y

---

[8] Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38 de 30 de junio de 2017, según enmendada, 3 LPRA Sec. 9601 *et seq.*
[9] *T–JAC v. Caguas Centrum*, 148 DPR 70 (1999).

conocimiento especializado.[10] Por lo tanto, los tribunales deben ser cautelosos al intervenir con las decisiones administrativas.[11]

Es por estas razones que, como principio axiomático, las decisiones de los foros administrativos están investidas de una presunción de regularidad y corrección.[12] La presunción de corrección que acarrea una decisión administrativa, deberá sostenerse por los tribunales a menos que la misma logre ser derrotada mediante la identificación de evidencia en contrario que obre en el expediente administrativo.[13] Ello, debido a que los tribunales deben dar deferencia a las determinaciones de las agencias sobre asuntos que se encuentren dentro del área de especialidad de estas.[14]

Asimismo, al momento de revisar una decisión administrativa, el criterio rector para los tribunales será la razonabilidad en la actuación de la agencia.[15] El estándar aplicable en las mencionadas revisiones no es si la decisión administrativa es la mejor, sino si la determinación de la agencia en cuanto a la interpretación de los reglamentos y las leyes que le incumbe implantar es razonable.[16]

**B.**

La Sección 19 del Artículo VI de nuestra Constitución establece que será política pública "reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación

---

[10] *Mun. de San Juan v. Plaza Las Américas*, 169 DPR 310, 323 (2006); *Hernández Álvarez v. Centro Unido*, 168 DPR 592, 615–616 (2006).

[11] *Metropolitana, S.E. v. ARPE*, 138 DPR 200, 213 (1995); *Viajes Gallardo v. Clavell*, 131 DPR 275, 289–290 (1992).

[12] *García v. Cruz Auto Corp.*, 173 DPR 870 (2008); *Vélez v. ARPE*, 167 DPR 684 (2006); *Rivera Concepción v. ARPE*, 152 DPR 116, 123 (2000).

[13] *ELA. v. P.M.C.*, 163 DPR 478 (2004); *Misión Ind. P.R. v. Junta de Planificación*, 146 DPR 64, 130 (1998); *ARPE v. Junta de Apelaciones sobre Construcciones y Lotificaciones*, 124 DPR 858 (1989).

[14] *Rivera Concepción v. ARPE, supra*, pág. 116; *Fac. C. Soc. Aplicadas, Inc. v. C.E.S.*, 133 DPR 521 (1993).

[15] *Rebollo Vda. de Liceaga v. Yiyi Motors, Motor Ambar, Inc.*, 161 DPR 69 (2004).

[16] *Empresas Ferrer v. ARPE*, 172 DPR 254, 266 (2007); *P.C.M.E v. J.C.A*, 166 DPR 599, 617 (2005); *Mun. de San Juan v. J.C.A*, 149 DPR 263, 279-282 (1999).

moral y social".[17] Conforme a dicho mandato constitucional, se promulgó el Plan de Reorganización Núm. 2-2011, conocido como el *Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011* (Plan 2-2011). Con tal propósito, el mencionado Plan promueve entre otros asuntos que se "establezcan procesos de rehabilitación moral y social del miembro de la población correccional o transgresor, a fin de fomentar su reincorporación a la sociedad".[18] El Plan de Reorganización Núm. 2-2011 facultó al Secretario de Corrección a establecer los criterios y condiciones para la concesión del privilegio de los programas de desvío.[19]

En lo pertinente, el Plan 2-2011 define "Programa de desvío" como "programa establecido para que las personas convictas cumplan parte de su sentencia fuera de la institución correccional, **sujeto a los criterios y condiciones establecidos mediante reglamentación**".[20] A raíz de ello, la Orden Administrativa DCR-2023-03 establece el procedimiento para la concesión de la participación en el Proyecto Pre-Reinserción a la libre comunidad. Dicha Orden Administrativa en su inciso (C) del acápite IV sobre Normas Generales establece lo siguiente:

1. Los Técnicos de Servicios Sociopenales de las Instituciones Correccionales serán responsables de evaluar los expedientes de los confinados e identificar los casos favorables.

2. Si del estudio y análisis del caso se determina que el miembro de la población correccional es un candidato potencial para que se le conceda el beneficio de participar del Proyecto, el Técnico de Servicios Sociopenales preparará un informe y presentará el caso ante el Comité de Clasificación y Tratamiento, utilizando el formulario correspondiente para oficializar el referido. Además, referirá copia del mismo formulario al Negociado de Programas Especiales y de

---

[17] Art. VI, Sec. 19, Const. ELA, LPRA, Tomo I.
[18] Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011, Plan de Reorganización Núm. 2 de 21 de noviembre de 2011, según enmendado, Art. 2, 3 LPRA Ap. XVIII.
[19] *Id.* Art. 16.
[20] *Id.* Art. 3 (w).

Rehabilitación para la investigación correspondiente, en conjunto con el Formulario establecido para el Plan de Salida.

3. **Una vez recibida la investigación, el Comité de Clasificación y Tratamiento, someterá al Secretario Auxiliar de Programas y Servicios sus recomendaciones al respecto, anejando copia de la liquidación de sentencia actualizada, evidencia de los tratamientos completados, evaluaciones psicológicas y el informe final del Negociado de Evaluación y Tratamiento, si corresponde**.

4. **El Secretario Auxiliar de Programas y Servicios evaluará la documentación sometida ante su consideración y remitirá sus recomendaciones al (a la) Secretario(a) del DCR para la determinación final.** Entendiéndose, que no / podrá iniciarse trámite alguno de trabajo o estudio hasta que no se cuente con la autorización del (de la) Secretario(a) del DCR o su representante autorizado.

5. **Si el(la) Secretario(a) del DCR, o su representante, no autoriza la participación del miembro de la población correccional en el Proyecto, deberá remitirse el documento con la determinación al Técnico de Servicios Sociopenales, quien a su vez le notificará al miembro de la población correccional sobre la determinación y sus fundamentos. Además, le orientará sobre el proceso de reconsideración, conforme a la Ley Núm. 38-2017 de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico.**[21]
[. . .]

Por otro lado, el Art. 17 del Plan 2-2011 sobre la notificación inicial a la víctima del delito establece:

El Departamento será responsable de notificar por escrito a la víctima del delito sobre el interés del miembro de la población correccional de beneficiarse del privilegio de participar de los programas de desvío y del derecho de la misma a ser escuchada, dentro de un término no mayor de diez (10) días, a partir de la fecha en que el miembro de la población correccional exprese su interés de acogerse al privilegio antes mencionado.

Dicha notificación deberá enviarse a la última dirección postal conocida de la víctima e incluirá:

(a) la intención del miembro de la población correccional de beneficiarse de del privilegio de participar de los programas de desvío;

(b) la mención del delito o delitos por los cuales fue convicto el cliente;

(c) una relación de las disposiciones de ley o reglamento aplicables a la participación de la víctima en el procedimiento; y

---

[21] Orden Administrativa DCR-2023-03, Sección IV (C) (1)- (5), págs. 6-7 (Énfasis nuestro).

(d) la dirección y número de teléfono de la oficina o el funcionario con el cual la víctima pueda comunicarse para recibir mayor información sobre su derecho de que se fije una vista.

Deberán realizarse todos los esfuerzos a su alcance para localizar y notificar la víctima del delito, manteniendo evidencia de ello en el expediente del caso.[22]

El Art. 18 del precitado Plan dispone:

Se crea el Comité de Derechos de las Víctimas de Delito adscrito al Departamento, para hacer recomendaciones a éste en aquellos casos donde la víctima del delito se oponga o solicite expresar su opinión mediante el mecanismo de vista, cuando un miembro de la población correccional solicite participar de un programa de desvío.

El Comité estará compuesto por los siguientes miembros: el Superintendente de la Policía o un representante de éste, el Secretario del Departamento de Justicia o un representante de éste, una víctima o familiar de víctima de un delito grave, un profesional licenciado de un campo de la salud mental y un abogado admitido a ejercer la profesión por el Tribunal Supremo de Puerto Rico, a ser nombrados por el Gobernador con el consejo y consentimiento del Senado.

Los miembros del Comité que no sean funcionarios públicos cualificarán para el pago de dieta y millaje en cumplimiento con las disposiciones legales y reglamentarias aplicables.

El Comité adoptará las medidas y procedimientos necesarios para su funcionamiento interno. Disponiéndose, que en la celebración de vistas no podrán utilizar el mecanismo de oficiales examinadores y que sus acuerdos tendrán que ser tomados por la mayoría absoluta de sus miembros. El Comité contará con apoyo técnico y administrativo del personal adscrito al Departamento.[23]

Consiguientemente, el Art. 19 establece el proceso respecto a la celebración de vista sobre el **privilegio** de programa de desvío y determinación sobre el mismo. Dispone:

Para propósitos de los programas de desvío, el Comité celebrará vistas sobre la evaluación de aquellos casos en los cuales la víctima se opone a la concesión del privilegio. Luego de la notificación inicial, la víctima tendrá un período de quince (15) días calendario para notificarle al Departamento si va o no a solicitar la celebración de una vista. Si al expirar dicho término, la víctima no ha solicitado la vista, se obviará la

---

[22] Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011, Plan de Reorganización Núm. 2 de 21 de noviembre de 2011, según enmendado, Art. 17, 3 LPRA Ap. XVIII.
[23] *Id.*, Art. 18.

celebración de la misma, presumiendo así una falta de interés por parte de la víctima.

Sólo se podrá obviar la celebración de la vista sobre la evaluación en aquellos casos que conste en el expediente del solicitante del programa, la notificación efectiva y certificada hecha a la víctima del delito de su derecho a que se celebre la vista; o que en su defecto, conste certificación de que se han realizado gestiones afirmativas y diversas para localizarla y notificarle y las mismas han resultado infructuosas.

En aquellos casos en que la víctima renuncie al derecho que le asiste de la celebración de una vista de consideración del privilegio, deberá consignarlo por escrito en el documento provisto por el Departamento. Copia de dicha renuncia se mantendrá como parte del expediente del caso. De constar una renuncia expresa, el deseo de la víctima será respetado y no procederá la vista dispuesta por este Plan.

En caso de que la víctima de delito indique que interesa la celebración de una vista de consideración del privilegio de programa de desvío, el Comité procederá a notificar por escrito a la víctima la fecha en que habrá de celebrarse la vista en la cual se considerará la solicitud del miembro de la población correccional.

. . . .

Con posterioridad a la vista, el Comité emitirá un informe con su recomendación al Secretario sobre el otorgamiento del privilegio bajo consideración. El Secretario tomará en consideración el informe con las recomendaciones del Comité al momento de emitir una decisión final sobre la otorgación al miembro de la población correccional del privilegio de participar en un programa de desvío.

Toda víctima del delito será notificada mediante correo certificado o entrega personal con acuse de recibo, de así solicitarlo en la vista donde se atendió su opinión sobre la consideración del privilegio de participar de un programa de desvío, de la determinación del Secretario sobre el privilegio solicitado. Además, se notificará a la víctima la fecha en que el convicto se reintegrará a la libre comunidad.

### III.

En este caso, el recurrente solicita que se revise la decisión de del Comité de Clasificación y Tratamiento (CCT) del DCR que concluyó que no era favorable el plan de salida y que se debería someter otro plan de salida que no contemplara los Municipios de Moca y San Sebastián.

Examinados los planteamientos del recurso ante nos, y ante la postura informada por la Oficina del Procurador General, procedemos a devolver el caso a la agencia para que reevalúe la solicitud de reconsideración del recurrente.

**IV.**

Por los fundamentos expuestos, se *revoca* el dictamen recurrido y se devuelve el caso a la agencia para que emita un dictamen de reconsideración conforme la OA-2023-03.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones